Gilbert M. Landy, J.
This is a summary proceeding brought by the Municipal Housing Authority for the City of Yonkers, petitioner landlord, hereinafter called “ Authority ”, against Violet Meade, respondent tenant, hereinafter designated ‘ ‘ Tenant ”, to evict her from Apartment 2-7K at 80 School Street, Yonkers, New York.
The lease between the parties, dated September 29, 1967 is for a term of one month commencing on October 1, 1967, with an automatic renewal for successive periods of one month under the same terms and conditions as contained in the lease with respect to the original term. However, either party has the right to terminate the lease and the tenancy thereunder, at the end of any monthly term, by giving to the other, one month’s prior notice in writing.
By letter dated February 8, 1968, the Authority gave notice to the Tenant of its election to terminate the tenancy on the 31st day of March, 1968. However, on February 7, 1967, the Federal Department of Housing and Urban Development issued a directive to all local authorities, part of which reads as follows:
*26 ‘ ‘ Within the past year increasing dissatisfaction has been expressed with eviction practices in public low-rent housing projects. During that period a number of suits have been filed throughout the United States generally challenging the right of a Local Authority to evict a tenant without advising him of the reasons for such eviction.
“ Since this is a federally assisted program, we believe it is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish.”
On March 28, 1968, the Authority, again by letter, notified the Tenant that:
11 Reference is made to our letter of February 8th, 1968 wherein you were advised that the Landlord elected to terminate your tenancy for the apartment which you occupy, 80 School Street, Apt. 2-7K, on the 31st day of March 1968.
“ In connection with the above mentioned letter of termination of tenancy you are hereby requested to call at this office for a conference on Tuesday, April 2nd, 1968, at 11 A.M., at which time you may be represented by Counsel.”
Pursuant to that notice, a conference was held by the Authority on April 4, 1968. On that conference, the Tenant was present, as was her attorney. Several tenants in the Authority complex, whose apartments were in proximity to that occupied by the Tenant, and a police officer of the Yonkers Police Department, recited incidents concerning the conduct of the Tenant, her husband, her son, and of an unmarried girl who resided with them. The charge was made by the cotenants that the son and the girl were drug addicts. It was not disputed that the son and the girl lived in the apartment. They also related their observations of the conditions of the apartment. Statements were made by those tenants who appeared at the conference, that the Tenant’s husband was an alcoholic and had, on a number of occasions, be seen lying in the hallway adjacent to the apartment door.
A member of the Yonkers Police Department recited that he had visited the apartment of the Tenant to execute a warrant for the arrest of her son who was charged with selling dangerous drugs. When he entered the apartment he noted several discarded glassine envelopes commonly used to enclose drugs, in the son’s room. The police officer added that at the same time he had observed the conditions of the apartment. He described these specific conditions, which will be referred to herein merely, as unsanitary.
*27 One of the witnesses who recited his observations of the activities of the Tenant and her family, stated that about two or three months prior to April 4, 1968, the Tenant's son went to the roof of the building, was screaming and was threatening to jump off the roof.
* It is not disputed by the Tenant that on tin hearing held on April 4, 1968, neither she nor her attorney asked any questions of the witnesses concerning the statements made by them. They had every opportunity to do so. On April 9,1968, following the hearing held on April 4, 1968, the Authority, by letter, advised the Tenant that she “ is no longer desirable and you are, therefore, notified that you must vacate said premises on or before May 31, 1968, in accordance with the terms of your lease ”. When the Tenant failed to vacate the premises on or before May 31, 1968, the Authority commenced the within summary proceedings. The trial of the summary proceeding was held by this court on August 28, 1968.
The notice of petition signed by the Secretary-Director of the Authority, alleges the existence of the lease of the premises commencing on October 1,1967, the provision that the lease was terminated by notice given to the Tenant more than one month before the expiration of the term and that the Tenant continued in possession of the premises, without permission of the Authority, after the expiration of the term. There was no reference in the petition to the fact that a conference directed by the Department of Housing and Urban Development had been held by the Authority prior to the date of the petition. At the commencement of the trial in this court, the attorney for the Authority moved to amend the petition to include the allegations that the Tenant had been notified that the conference would be held, that it had been conducted on April 4, 1968 and that the Tenant had been given notice dated April 9, 1968, that pursuant to the conference it had been determined that the Tenant was no longer desirable and that she was required to vacate the premises on or before May 31, 1968. The Tenant objected to the amendment on the ground of surprise and on the additional ground that the Tenant was prejudiced thereby. In view of the fact that the Tenant’s attorney had been advised some weeks before in a conference between the respective attorneys and the court, that the amendment would be made, the court held that the Tenant had not been surprised and had not been prejudiced. The motion to amend the petition was granted.
Prior to the decision of the United States Supreme Court in Thorpe v. Housing Auth. (386 U. S. 670), decided on April 17, 1967, little objection had been heard concerning the right of *28 public housing authorities to terminate leases which contained the provision to do so after a specified timely notice. In Thorpe, the tenant in a Federally assisted low-rent housing project in Durham, North Carolina, had a lease which provided for the termination thereof by the giving of at least 15 days’ notice before the end of any monthly term. On August 10, 1965, the tenant was elected president of the tenant’s organization, comprising tenants in the project. On the following day, the Authority gave the tenant notice of termination of her tenancy on August 31, 1965. The notice gave no reason for the cancellation of the lease and the Authority refused the tenant’s request for an explanation. A summary ejectment action was brought in the Justice Court in Durham. The judgment of ejectment in that court was affirmed in the Superior Court of Durham County and in the Supreme Court of North Carolina (267 N. C. 431).
In the United States Supreme Court, the tenant maintained that she was constitutionally entitled to notice setting forth the reasons for the termination of the lease. On February 7, 1967, before the case was reached for argument in the Supreme Court, the Department of Housing and Urban Development issued the directive, which has been quoted above, to the local housing authorities.
In its Per Curiam decision, the court (pp. 673-674) remanded the case to the North Carolina courts “ for such further proceedings as may be appropriate in the light of the February 7 circular of the Department of Housing and Urban Development.” The court did not elaborate on any additional rights to which the tenant may have been entitled.
While, in a concurring opinion, Justice Douglas seemingly implies that the Government, unlike private landlords, is subject to all the requirements of due process and suggests that a tenant may not be evicted from a public housing project because of his exercise of a constitutional right, i.e., free speech, right of association, etc., Justice Douglas was of the opinion that the court should have vacated the eviction order and should have remanded the case to the State courts of North Carolina (p. 681)
‘ ‘ to determine the precise reason why petitioner was evicted and whether that reason was within the permissible range for the state action against the individual ”. Justice Douglas pointed out, too, that the remand by the majority of the Court, “ furnishes no guidelines for the state courts on remand ”.
In the case of Matter of Vinson v. Greenburgh Housing Auth. (29 A D 2d 338) the Authority sought to evict the tenant from a public housing project in the Town of Greenburgh, New York. *29 The lease between the parties covering the premises occupied by the tenant, contained provisions which, insofar as material to the within case, contained identical terms and conditions relating to the right of the parties to terminate the lease. The tenant had occupied the apartment in which he resided since July 16, 1962. On March 29, 1966, a written notice of termination of the lease was given by the Authority to the tenant, effective April 30, 1966. No reason for the termination was given to the tenant by the Authority. A summary proceeding to evict the tenant was commenced in the Justice Court of the Town of G-reenburgh. The tenant brought a proceeding pursuant to article 78 of the CPLR in the Supreme Court, Westchester County, to annul the termination of the Housing Authority and. to stay the proceedings in the Justice Court. At Special Term, the court granted the motion of the tenant unless the Authority submit an appropriate return stating the grounds for termination of the tenancy. The appeal by the Authority to the Appellate Division followed.
In its decision, Judge Hopkihs, speaking for the court, discussed the variations in the relationships between a private landlord and a tenant as distinguished from that of a public Housing Authority and a tenant. The court pointed out that the spirit and the intent of the New York State Constitution (art. XVIII) as well as the statutory provisions (Public Housing Law) must be considered in the interpretation of the terms of the lease between a housing authority and a tenant. The court made this observation (p. 341): “ We think that a housing authority cannot arbitrarily deprive a tenant of his right to continue occupancy through the exercise of contractual provision to terminate the lease. In other words, the action of the housing authority must not rest on mere whim or caprice or an arbitrary reason.”
Again at (p. 343): “ To be sure, some State courts have held, that a housing agency may terminate a lease with a tenant with similar provisions in the same manner as a private landlord (Housing Auth. of City of Durham v. Thorpe, 267 N. C. 431, vacated and remanded 386 U. S. 670; Pittsburgh Housing Auth. v. Turner, 201 Pa. Super. Ct. 62; Columbus Metropolitan Housing Auth. v. Simpson, 85 Ohio App. 73; Chicago Housing Auth. v. Ivory, 341 Ill. App. 282). We think that the better rule is that the housing agency must have a reasonable ground for termination. ’ ’
The Appellate Division merely affirmed the order of Special Term which granted the motion of the tenant unless the Authority submitted a further return to it.
*30 Thus, the decision of the court in Vinson, as well as that in Thorpe, to quote the words of Justice Douglas (p. 681), ‘ ‘ furnishes no guidelines ’ ’ to the lower courts for the procedure to be employed in this type of ease. Accordingly, this court concludes that it must determine what proceedings are ‘ ‘ appropriate in the light of the circular ’ ’ of the Department of Housing and Urban Development, dated February 2, 1967. This procedure is consistent with the Appellate Division’s observation in Vinson (p. 343) in referring to the Thorpe case, that “It is implied by the decision that the petitioner should be accorded on the remand the treatment provided by the directive ”.
The court holds that at the conference held by the Authority on April 4, 1968, of which the Tenant had notice (letter of March 28, 1968), at which the Tenant was present with her attorney and at which the other tenants and a policeman related their observations of the activities of the Tenant, her husband, her son and a girl who resided in the apartment, the requirements of the directive of the Department of Housing and Urban Development, dated February 7, 1967, have been complied with (Matter of New York City Housing Auth. v. Gantt, 57 Misc 2d 447). This appears to be true, especially in view of the presence of the Tenant and her attorney and of their presumed right to question the persons who testified before the Authority officials.
The Tenant points out that the conference was conducted by members of the Authority and she adds that the Authority, therefore, was not an impartial tribunal. She alleges, also, that she was not given advance notice of the exact charges against her and that no specific findings had befen made by the Authority. An answer to those objections appears to be found in the decision of the Supreme Court in the Thorpe case (supra), which the court remanded to the State courts for proceedings as may be appropriate in the light of the directive. The directive merely directs a ‘ ‘ private conference or other appropriate manner ’ ’, at which the reasons for the eviction are given and that the Tenant have an opportunity to make such reply or explanation as he may see fit.
It may be desirable that a more formal procedure be employed by the Authority in these matters including that the incorporation of a statement of the reasons for the proposed eviction be contained in the notice to the tenant, that the witnesses be sworn and that the notice of the decision of the Authority include a statement of the general reasons why the tenant is undesirable. This is true in view of the right, implied in the *31 Vinson and Gantt cases, to review, pursuant to article 78 of the CPLR, of the determination of the Authority.
As the court holds that the evidence produced on the trial before this court demonstrates that the requirements of the directive dated February 7, 1967 of the Department of Housing and Urban Development have been complied with, it follows that the directives of the courts in Thorpe and Vinson have been satisfied. Final order and warrant in favor of the Authority against the Tenant is granted. Execution of the warrant is stayed until December 15, 1968.